Good morning, Your Honors. My name is Stephen Mayer. I represent the appellant, and I would like to reserve four minutes for rebuttal. The dispositive issue in this case is whether advertising.com is generic or descriptive. A generic mark is not entitled to trademark protection, no matter how much secondary meaning it has, because a generic mark does nothing more than name the class of goods or services covered by the mark. And if it were trademark protected, no competitor could accurately describe its goods or services as what they are. In contrast, a descriptive mark merely identifies a quality or characteristic of the covered goods. As the Seventh Circuit said, the difference between generic and descriptive is the difference between French salad dressing, which is a type or kind of salad dressing, and tasty salad dressing, which is a quality of salad dressing that applies to French dressing, Russian dressing, etc. Now, here everyone agrees that the word advertising by itself is generic. No one could trademark it. So the issue is whether the generic word advertising becomes descriptive when it's coupled with the top-level domain name .com. The district court held that AOL was likely to show that advertising.com was descriptive, and it reasoned that because advertising described the general nature of AOL services and the .com described their Internet relatedness, that the mark was descriptive. But the district court committed a legal error that was so fundamental that even AOL doesn't defend it in assuming that because a mark describes something, it's necessarily descriptive. That, as the Seventh Circuit said in the Milmore case, is a fundamental legal error. Because what the district court should have asked was not, is the mark descriptive, but what does it describe? If it describes the name of the class of services that are at issue or the genus, it's generic.  Now, in this case, there is no real dispute about what advertising.com denotes. If you look at page 43 of the Applebee's brief and page 11 of their opposition to the stay motion, they say, plainly and clearly, advertising.com describes the Internet related nature of their advertising services. So the knife edge issue here is, is Internet related advertising, or to use the shorthand, Internet advertising, a genus or not? And our position is that it unquestionably is. And if you ask AOL what do they do, they will tell you, as they do on page 43 of their brief, that they provide advertising services for the .com world. But the same could be said of advertise.com or indeed any other company in the Internet advertising market. And indeed, the fact that we speak of an Internet advertising market demonstrates that there are many companies that provide similar services. That's what a market is. So you have advertising.com, advertise.com, and all the others, and any one of them could accurately describe their services as, to coin a phrase, .com advertising, and any of them could use the phrase advertising.com to accurately reflect what they do. And indeed, that's exactly what you find. If you look at the domain names listed in page 3 of our supplemental or further excerpts of record, there's a list of domain names that use the word advertising.com. And here, as in the hotels.com case and the mattress.com case, the use of these domain names that incorporate advertising.com indicates that advertising.com is generic. It's just like Duck Tours in the Boston Duck Tours case. You could have Super Duck Tours, Boston Duck Tours, San Francisco Duck Tours, Speedy Duck Tours, but the root word, the Duck Tours, is generic, just as advertising.com is in this case. Another way to look at it is to look at the phrase .com advertising, which, after all, is just advertising.com in reverse. That's unquestionably generic, so generic that it appears in the dictionary, cited at page 953 of the record, as an example of the use of the phrase .com. So if .com advertising is generic, then so is advertising.com. And indeed, as note 16 in the Milmore case suggests, that where you have two words that are generic, like warehouse shoes, they're also generic if you reverse them unless there's some sort of cognitive leap, which there is not here. Now, AOL could say, or someone could say, well, .com advertising doesn't mean the same thing as advertising.com, because advertising.com is part of a domain name, and .com advertising isn't. But we know from page 42 of AOL's brief that they're not saying that advertising.com is distinctive because it's part of a domain name. Indeed, that's the way they try to distinguish the hotels.com and mattress.com case. Instead, what they say is that the .com here is distinguished because it describes the internet-related nature of their services. I think it's worth spending a minute with that to explain why they're wrong. The hotels.com and the mattress.com cases stand for the proposition that except in rare or extraordinary circumstances, the use of a generic word coupled with the .com produces a generic mark. And this clearly is not one of those extraordinary circumstances, because when you look at how the .com is used here, and AOL says it denotes, and the district court found, that it denotes services of an internet-related nature, that use of the phrase .com is itself generic. Their use of .com in advertising.com is exactly the same as in the phrase millionaire, .com bubble, or my own favorite example from AOL's own brief, advertising services for the .com world. In all those instances, AOL is using the TLD .com to mean related to the internet, and it's the same use as in .com millionaire, the same use as in .com bubble. So what you have here is a situation where you have a conceitedly generic word coupled with what even the district court found to be a common, ordinary, garden-variety use of the mark .com. And you couple the generic word and the generic use of the .com together, and you get something that is indisputably generic. There is, in this case, there's really no limiting principle. If AOL can trademark advertising.com, the same will be true for any other common noun or verb. Eating.com, lending.com, banking.com, financing.com, and a substantial part of the English language would be taken over and made into anti-competitive monopolies. That's particularly problematic in this case, and here's why. There's no easy synonym for the word advertising. Marketing covers half of it. Marketing might cover the part of what we do that sells advertising on behalf of sellers, but marketing wouldn't cover the work that we do and that they do on behalf of web publishers. So you have a situation where you really have to use the word advertising to denote what we do and what they do. And we also have the right to use the .com mark because that's the quickest, easiest way of communicating to our Internet audience that we are an Internet-related business, that we are an Internet advertising business. And to give AOL the monopoly right to use the word advertising.com would give them an unfair competitive advantage that the trademark laws were not intended to confer because it would prohibit us and every other business in this crowded Internet advertising market from describing our goods as they are. And that's a result that the trademark laws were not intended to and should not be construed to accomplish. If the Court has any questions, I will. Thank you. I'm going to turn my phone off. That's all right. Don't worry. You've got time. Good morning. Ken and Shannon McGammon of Williams & Connolly for the AOL athletes. May it please the Court. In trademark law, whether a mark is generic is a question of fact, not of law. And the relevant inquiry is whether consumers understand the mark as a whole to signify an entire category of goods or services. Now, don't you concede that advertising alone or advertised is generic? Yes, we do, Judge Fletcher. And for purposes of this discussion, we would be happy to accept even the proposition advanced by my friend, Mr. Mayer, that the relevant genus here is online advertising. But it does not follow from that fact, Judge Fletcher, that the mark in question in this case is generic. And let me explain to you why that is. Well, I have a lot of trouble with that, so tell me. Sure. Well, first of all, let me start from the proposition that this is an issue of fact. And the reason that it's an issue of fact is that the touchstone of the inquiry is consumer understanding. And in determining how consumers understand the meaning of a particular mark, courts naturally look to how the mark is, in fact, used. And this Court has done so ever since its first significant genericness decision in Surgesonners. And in this case, there was simply no evidence before the district court at the preliminary injunction stage to suggest that advertising.com, the mark as a whole, is, in fact, used generically. In fact, to the contrary, all of the evidence that was before the district court at that stage suggested that when the mark was used, it was used to refer to AOL's services. And this Court has repeatedly made clear that that is really the fundamental inquiry. What was that evidence? The evidence that was presented by advertise.com, which bore the burden of proof because AOL's marks are registered, consisted entirely of two articles that contained references to advertising.com. And you can see the evidence. It's laid out in the table of contents to appellants' excerpts of record. Volumes 3 through 5 of the excerpts of record contain the opposition to our motion for preliminary injunction, and there's a list of all of the exhibits. And you'll see that for purposes of genericness, the only relevant evidence are these two articles. And in both of the articles, it is elusively clear that advertising.com was used to refer to AOL's services. To take one example, at ER 346, there's an article from the British newspaper, The Guardian, which talks about AOL's acquisition of the company advertising.com and refers, quote, to a deal to acquire online marketing firm advertising.com. And this is really the critical point, because it is one thing for a company to say that it provides online advertising services. Companies, including our advertising.com brand, use that phrase all the time. But it would be wholly unnatural for a competitor in this industry to say that it provides advertising.com services. And, again, that's really the critical inquiry. And as I understand my friend, Mr. Mayer, here today, he seems to be suggesting that simply because our brand, advertising.com, conveys no additional information beyond the fact that we are in the online advertising business, that it is somehow automatically rendered generic. And this is a vital point, because I think that this is really where we disagree about where the law is. And I would respectfully submit that that understanding of the law is incorrect. And to take an example from this Court's own jurisprudence, the Committee for Idaho's High Desert case. In that case, it could readily be said that the name in question, Committee for Idaho's High Desert, conveyed no information beyond the appropriate genus for the entity in question. It was an environmental advocacy organization with a particular interest in the desert region of Idaho. But this Court held that that mark was eligible for protection as a descriptive mark upon showing a secondary meaning. And here is what the Court said at 92 F. 3rd 822 as to why that is so. It is not at all difficult to imagine another term of reasonable conciseness and clarity by which the public could refer to these goods and services and their producer. And that is exactly the case here. We are happy to concede that advertising.com indicates that our company provides advertising services of an online nature. But a competitor in the industry need not use that exact phrase to describe their goods or services. A competitor can readily communicate the nature of their services by describing themselves as an online advertising or online marketing or Internet advertising or Internet marketing company. And the consequence, I would respectfully submit, of accepting advertise.com's rule would be to pitch whole categories of marks into the genericness bucket. And that would be true both with regard to .com marks and with regard to other marks. Can you give me some examples of generic word with .com that have been found to be protectable? Well, the central inquiry would be whether consumers understand the mark in that manner. That wasn't my question. Give me some other examples. Well, I think it is hard to imagine such an example of Judge Fletcher simply because I don't think that phrases with .com in it are used in that manner. Now, that's not to say that such an example might not exist. And if, for instance, there was a showing that a competitor in the widgets industry referred to itself as providing widgets.com services, then the mark would be generic. But as we suggest in our brief, we believe that in most cases, and perhaps in all current cases, it would be very difficult to make that showing. And let me try to come at this point from another direction conceptually. As a practical matter, when a consumer hears a mark ending in .com, the consumer is ordinarily going to understand that that refers to a particular domain name. And that is really why a phrase like advertising.com differs from a phrase like .com advertising. It's because when a consumer hears any name ending in .com, the consumer is going to think, boy, that's an Internet domain name. And because consumers will naturally understand that only a particular owner can hold any given domain name at a given time, the resulting mark will, in the ordinary course, ordinarily, intrinsically, denote a particular source of goods or services. Now, again, that's not to suggest that we're advocating some sort of categorical rule. Quite to the contrary, in any case, this will be a fact-specific inquiry. As this Court has repeatedly... Just to follow up on Judge Fletcher's question, which is, what's the best case out there that supports your position? Well, the cases that have considered .com marks are largely those from the Federal Circuit. And as will be clear from the briefing, the cases in the Federal Circuit have gone in both directions with the steelbuilding.com and the... Take one for an example and play it out. Well, sure. Well, let me take the cases that have recognized .com marks as descriptive from the Federal Circuit. And the rule that the Federal Circuit seems to be applying across these cases is a quite straightforward one. As the Federal Circuit said in the steelbuilding.com case, the critical question is whether the addition of .com intimates some Internet feature of the good or service in question. And in this case, I think it's vital to understand that the addition of .com does more than it does in the Federal Circuit cases that go my friend Mr. Mayer's way. And the reason that that is so is that in this case, AOL does not use advertising.com in order to drive traffic to a website where it offers garden variety advertising services. The addition of .com does suggest something more. It suggests that AOL offers services of an online nature. And if there were no .com, that suggestion would not exist. So we believe that even under the rule that the Federal Circuit seems to apply, this mark would be treated as a descriptive mark with secondary meaning. Well, let me ask you a question. If somebody was clever enough to get a mark for plumbers.com, would then that under your reasoning preclude somebody from using plumber.com? Well, it might. And let me lay out, Judge Ezra, how I think the analysis would go. The first question is. Because that's the floodgate that counsel suggests, opposing counsel suggests is being opened here. Well, I don't think that it would open the floodgates. And let me explain how the analysis would work. First of all, a court would have to consider whether there is evidence that consumers understand plumbers.com to be a generic reference, to signify the entire category of goods or services. Now, assume that plumber.com was unable to present such evidence. And I'm assuming for present purposes that plumbers.com has in fact been registered, as is true in this case, and therefore the burden would lie on the challenger. If there is an inability to come forward with such evidence, the mark would be descriptive because it would refer to plumbers.com as a particular source. But that wouldn't be the end of the inquiry. Because if the mark is rendered descriptive, a party still has to come forward with evidence of secondary meaning, evidence that in fact in the marketplace the mark has acquired distinctiveness. Now, secondary meaning is an important protection because the upshot of treating a mark as descriptive is simply to say that the mark is eligible for protection. However, in this case, that's not at issue simply by virtue of the fact that AOL not only has three registrations in advertising.com marks, but one of those registrations has become incontestable. And the effect of a mark becoming incontestable is to render all challenges to the mark off the table, except a challenge of genericness. And it's precisely for that reason that advertise.com can't and doesn't challenge the fact that our mark has secondary meaning. Now, having said that, I think it's very important to understand that we in fact have a mark that indisputably has acquired secondary meaning. AOL has been using this mark along with its corporate predecessors for almost a decade. And the district court found that the mark had acquired secondary meaning. The district court further found that AOL had invested millions of dollars in the mark and that the mark had attained widespread recognition in the online advertising industry. By contrast, advertise.com is a latecomer. It adopted its mark in April of last year. And it did so, as the district court found, with actual and constructive knowledge of AOL's own marks. And I think that one thing that is telling in this case is that advertise.com comes to this court challenging only the aspect of the preliminary injunction that enjoins use of the word mark. It does not challenge the aspect of the preliminary injunction that challenges the use of their stylized logo. And I think it's very difficult, with all due respect to advertise.com, not to come away with a sense that advertise.com really did adopt its name in bad faith. And if one takes a look at the similarity between the logos and the similarity between the websites of the two sources, which is reproduced in the statement in our brief, I think that it is a fair inference that advertise.com is really trying to trade on the goodwill that advertising.com had developed in its brand over many long years. And that's precisely why protection is so important here. The effect of advertise.com's rule, and it really is, as Mr. Mayer suggested this morning, a categorical legal rule, would be to pitch this entire category of marks into the public domain. And that would include hundreds of marks that the Patent and Trademark Office has actually registered because, as we indicated in our brief, the PTO has registered several hundred marks ending in .com as descriptive marks with secondary meaning. And we believe that that would be problematic precisely because in cases like this, in which the holder of the mark has invested huge sums in the mark, and the mark has acquired secondary meaning as a result, the policies behind the trademark laws really support protection. But, you know, of those hundreds that they've registered, the first name or word usually is not generic. Well, I don't think that that's true with respect, Judge Fletcher, and we provide various examples in our brief. But I think... I invited you to give us some of those examples. ...of marks that have been treated as descriptive, even though the first part of the mark would be generic standing alone. I think that there are plenty of examples in that category, Judge Fletcher, and we list salary.com, stocks.com, and there are numerous others. But I think the best evidence of how the Patent and Trademark Office views this area is the evidence of how they've treated the marks that are at issue in this case. And the Patent and Trademark Office, of course, with regard to our marks, concluded that advertising.com is descriptive and protectable with the showing of secondary meaning. It concluded in the office action ruling on advertise.com's mark that the mark was descriptive but had not yet obtained secondary meaning. And it recently concluded, as we indicated in a supplemental letter, that add.com appeared to be descriptive and entitled to protection as well. And so I think that there's no doubt that the Patent and Trademark Office takes the appropriate approach. It engages in a case-by-case analysis, looks at the evidence pertinent to the relevant mark, and evaluates whether the mark, by virtue of consumer understanding, should be eligible for protection. Let me say one thing about the broader context of this issue because it is certainly true that this is the first time that the Ninth Circuit has considered the protectability of a .com mark. The applicable broader principle of trademark law here is the anti-dissection rule. And as this Court has held in the Committee for Idaho's High Desert case and numerous other cases, the critical point is that the mark has to be considered as a whole. And what advertise.com is really asking this Court to do is to break down the mark into its constituent parts and to hold that wherever the first part of the mark would be generic, standing alone, the combined mark should be treated as generic simply as a matter of law. And again, we believe that that rule simply cannot be reconciled with this Court's decisions applying the anti-dissection rule. And if you think about marks that don't end in .com, the implication would be to take not only marks such as Committee for Idaho's High Desert, which this Court has treated as descriptive, but also marks such as American Bar Association, marks such as WebMD, AutoZone, and numerous others, as to which it can similarly be said that the mark communicates no information other than information about the general genus of goods or services, and to treat those marks as generic. And that would be very problematic both in the .com area and outside it, and it really can't be reconciled with this Court's consistent line of cases. Thank you. Thank you. I want to address the issue of bad faith first. The Court in Boston Ductor said that, quote, the trademark law, quote, is not intended to prevent confusion between two similar generic marks. So the fact that we have the right, if advertising.com is generic, we have as much right to call ourselves advertise.com as they do to call themselves advertising.com. Indeed, in 1888, the Supreme Court held that you could have two companies, one calling itself Goodyear Rubber Manufacturing Company, and one calling itself Goodyear Manufacturing Company. That was when Goodyear was generic. That did not fall afoul of the trademark laws. With respect to reliance on the PTO decisions,  that the decisions of individual PTO examiners aren't binding on the federal courts. With respect to the AOL marks in this case, it's important to note that the marks were issued, even the latest ones, before the Federal Circuit cases in hotel.com and mattress.com, which clarified the law in this area, and for that reason are entitled. So how do you understand the Federal Circuit's position in this area? I understand the Federal Circuit's position to be that generic names coupled with .com are almost always generic. There's no case which explicitly holds that the combination of a generic word with a .com TLD is non-generic. Opperdahl and Larson didn't deal with the issue of genericness, and in steel building, the Federal Circuit expressly held that steel building, the words squished together, that there wasn't enough evidence to decide that it was generic. So as of now, there is no case, not one, which is expressly held where the issue is squarely presented that the combination of a generic word with .com was anything other than generic. And it's not surprising that counsel couldn't come up with an example because there is none. With respect to issues of fact, the Court is undoubtedly aware of the rule that a district court's factual finding is not entitled to deference if it's infected by legal error. I explained in my opening statement why that's true in this case, because the district court adopted the wrong view of the word descriptiveness, and I heard no more from AOL's counsel on that issue, defending the district court's reasoning than AOL presented in its brief, which is to say nothing. With respect to the newspaper articles about advertising .com as a business, suppose you had a company called Billboard Advertising .com, or Billboard Advertising Inc. Let's drop the .com out of it. Indisputably generic, just like internet advertising or online advertising. And if it were a big enough company, it would be followed in the financial press. If they bought another company, if they made a big deal with the New York State Thruway to put billboards everywhere, you'd read articles about them in the financial press, and they would refer to that company by name. They'd say Billboard Advertising Inc. did this or did that or fired their CEO or whatever. Would that prove that Billboard Advertising Inc. were generic? Of course it wouldn't, and the same is absolutely true here. Counsel tried to analogize this case to Committee for Idaho's High Desert. Totally different. There, you had a name that was poles apart from the genus. The genus was Environmental Advocacy Organization, a genus that sounds nothing whatever like Committee for Idaho's High Desert. Here, the genus and the name are synonymous. Advertising.com equals .com advertising, and that's what you have here. Would this open the floodgates? Counsel said, well, we'd have to, in the hypothetical Plumbers case, if you had Plumbers.com registered, would that stop someone else from calling themselves Plumber.com? Counsel said, well, it'd have to prove secondary meaning, but then a few minutes later he admitted that if you have a mark and you use it for five years, it becomes incontestable, and secondary meaning doesn't matter. So that if you had the hypothetical Plumbers.com and they used it for five years, and they got it registered, that would be incontestable, and they could then have an ironclad right to stop anyone else using Plumber.com. Steel building. Well, that would be unless it's generic. That's exactly right. Steel building. They're turning steel building on its head. The point of steel building is that the .com in that case signified a special characteristic of their Internet site. But here, AOL says, we don't have anything special on our Internet site. It's only promotional. We do all our business off the Internet, so you can't use steel building to justify what they're doing here, particularly in a case where steel building is, as the Federal Circuit held in that case, not necessarily generic and advertising clearly is. Finally, the AOL talked about its investment. You know, this Court said in the anti-monopoly case that Parker Brothers took the risk of using a generic word as their trade name, and it didn't matter how much money they put into it. The secondary meaning can't take a word out of genericness and put it into descriptiveness, and the same is true here. When they used the conceitedly generic word advertising and coupled it with a .com phrase or TLD used in its ordinary, common, garden-of-variety generic meaning, they took the risk that it would be found generic, and that's exactly what this Court should hold. Thank you. Thank you, Your Honor. We appreciate your arguments on both sides. Interesting case, and we'll submit it at this time. And that ends our session for today. All rise. Thank you.
judges: Ezra, Fletcher B. , Paez